IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC SIMPSON, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 14-166 |
| | : | |
| MICHAEL FERRY, et al., | : | |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                                                          August 9, 2016

## MEMORANDUM OPINION

Plaintiff, Eric Simpson, alleges that following a foot chase, his civil rights were violated when several officers from the Philadelphia Police Department ("PPD") used excessive force. Plaintiff has filed various federal and state law claims against these officers, and further seeks to impose municipal liability upon the City of Philadelphia (the "City") pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978). Before me is the City's motion to dismiss Plaintiff's Monell claim. For the reasons that follow, the City's motion will be granted in part and denied in part such that the claims alleging an unlawful custom and a failure to train may both proceed.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from the Second Amended Complaint and the exhibits attached thereto, and will be viewed in the light most favorable to Plaintiff. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

Plaintiff alleges that on the evening of July 17, 2012, Defendant Officers Chris X. Lai and John F. O'Connor observed him at 18th and Federal Streets in Philadelphia, Pennsylvania, and began walking toward him. Plaintiff claims to have experienced numerous encounters with

Philadelphia police officers, and that "Defendant Lai, in particular, had a habit of stopping Plaintiff and slamming him against walls and aggressively grabbing him dating back to 2006." In February 2011, Defendant Lai allegedly "hit Plaintiff in the head with a flashlight during a stop." This history of being unjustly targeted and antagonized by the police has caused Plaintiff to flee from police for fear of being harassed. As such, Plaintiff fled from Officers Lai and O'Connor when they approached him on July 17, 2012. (2d Am. Compl. ¶¶ 16-21, 26-28.)

As Officers Lai and O'Connor began chasing Plaintiff, two other officers, Defendants Michael Ferry and John C. Landis, also gave pursuit. The officers eventually caught up to Plaintiff in an alleyway, and instructed him to place his hands behind his back. Plaintiff complied, but once Officer Lai had secured one of Plaintiff's hands, Lai allegedly slammed Plaintiff against a wall and "violently threw [him] to the ground." Officer Ferry then allegedly restrained Plaintiff while the other officers "repeatedly kicked and punched him" in the head and stomach. Plaintiff claims to have momentarily lost consciousness during the beating, and states he was subsequently placed in a patrol car while bleeding from his head and torso, and "spitting blood." An unnamed superior officer is alleged to have observed Plaintiff's condition, and directed Defendant Lai to immediately take Plaintiff to the hospital. Plaintiff claims that he suffered grievous, long-lasting injuries in addition to mental and emotional distress as a result of this incident. (Id. at ¶¶ 22–37.)

Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for excessive use of force in violation of the Fourth Amendment against the individual Defendant officers. He has also filed related state law claims for assault and battery, and intentional infliction of emotional distress. (Id. at ¶¶ 55–64, 78–100.)

Additionally, Plaintiff has brought a claim pursuant to 42 U.S.C. § 1983 against the City under the United States Supreme Court's Monell decision. (2d Am. Compl. ¶¶ 65–77.) Plaintiff asserts that (1) the PPD has a policy or custom of allowing and acquiescing in its officers' use of excessive force, and (2) the PPD has failed to properly train, supervise, and discipline its officers with respect to excessive force. (Id. at ¶¶ 4, 42, 45–48, 51–52, 65–77.)

On June 10, 2015, I granted the City's first motion to dismiss Plaintiff's Monell claim, but allowed Plaintiff leave to amend in order to "make reference to any policymaker, whether by name, title or otherwise, that was aware of the alleged excessive use of force and acquiesced to it." (See Doc. No. 30, p. 5 ¶ 10.) This Order also instructed Plaintiff to include available factual support to further place the City on notice of the contours of his Monell claim. (Id. at 5 n.4.) Plaintiff complied with these instructions, naming former Mayor Michael Nutter ("Nutter") and former Police Commissioner Charles H. Ramsey ("Ramsey") as policymakers.[1] (2d Am. Compl. ¶¶ 67–75.) Plaintiff also attached to his Second Amended Complaint multiple exhibits: a news article which cites statistics regarding the number of misconduct complaints filed against the Philadelphia Police Department; a Department of Justice report ("DOJ Report")[2] evaluating the PPD's use of deadly force; and, other news articles written after the DOJ Report was issued in March 2015 summarizing the DOJ Report's findings. (See 2d Am. Compl., Exs. A, B, C, D, E.)

The Defendant Officers have not challenged Plaintiff's ability to state claims for excessive force or his related state law claims. The City, however, has again separately moved to dismiss Plaintiff's Monell claim (Count II) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[1] The City has not challenged Nutter or Ramsey's status as policymakers for purposes of Monell liability.

[2] George Fachner & Steven Carter, Washington, DC: Office of Community Oriented Policing Services, Collaborative Reform Initiative: *An Assessment of Deadly Force in the Philadelphia Police Department* (2015).

## II.     LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While it "does not impose a probability requirement at the pleading stage," plausibility does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

In evaluating a motion to dismiss, courts generally consider only the allegations contained in the complaint, the exhibits attached thereto, and matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 567 (3d Cir. 2002). Finally, "a complaint may not be dismissed merely because it appears unlikely that [a] plaintiff can prove those facts or will ultimately prevail on the merits." Connelly v. Lane Const. Corp., 809 F.3d 780, 790-91 (3d Cir. 2016) (quoting Phillips, 515 F.3d at 231).

### III. ANALYSIS

#### A. Consideration of the DOJ Report

As noted above, Plaintiff has attached a DOJ Report to his Second Amended Complaint, and urges that it be considered in assessing the plausibility of his Monell claim. Plaintiff also cites to excerpts of the Report in his Second Amendment Complaint in support of his municipal liability allegations.

The DOJ Report was issued after former Philadelphia Police Commissioner Charles Ramsey requested assistance from the U.S. Department of Justice to address an increase in officer-involved shootings. (DOJ Report at p. 1.) It is a "technical report on the current and future states of deadly force policy, training, investigations, and practice[s] in the PPD." (Id.) "The assessment was conducted by an interdisciplinary team of researchers, analysts, and subject matter experts over a 12-month period."[3] (Id.) While the Report sets out goals pertaining to enhanced training initiatives and transparency with respect to deadly force situations, an additional articulated objective contained within the Report is to "strengthen the use of force review process." (Id.) The Report totals one-hundred-twenty-five (125) pages in length, and contains numerous findings, recommendations, and directives for the PPD's adoption.

Although the parties did not brief whether or not I may consider this Report in assessing the plausibility of Plaintiff's Monell claim, as a threshold matter, I will first address its applicability to the resolution of the City's pending motion.

Several reasons support consideration of the DOJ Report at the motion to dismiss stage. First, the City has not objected to its consideration for purposes of evaluating Plaintiff's ability to plead his Monell claim. Second, the DOJ Report was attached as an exhibit to Plaintiff's Second

---

[3] The DOJ Report's findings and recommendations are based on a review of incidents occurring from 2007 to 2013. (DOJ Report at p. 2.) Therefore, the incident occurring on July 17, 2012 falls within this period.

Amended Complaint. See Schmidt, 770 F.3d at 249 ("In evaluating a motion to dismiss, courts generally consider only the allegations contained in the complaint, the exhibits attached thereto, and matters of public record."). Third, it appears that the Report arguably qualifies as a public record. See In re Wellbutrin SR/Zyban Antitrust Litig., 281 F. Supp. 2d 751, 755 (E.D. Pa. 2003) ("Courts have defined a public record to include published reports of administrative bodies."). Fourth, the United States Court of Appeals for the Third Circuit has acknowledged that, in reviewing a 12(b)(6) motion, "document[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). Here, Plaintiff has expressly relied upon specific portions of the DOJ Report in his Second Amended Complaint.

Conversely, there are a few potential reasons warranting exclusion of the Report from my analysis of Plaintiff's Monell claim. The primary focus of the DOJ Report involves the use of deadly force—not excessive force, which is at issue in this case. Indeed, the title of the Report is "*An Assessment of Deadly Force in the Philadelphia Police Department.*" Plaintiff has cited certain statistics in his Second Amended Complaint regarding officer-involved shootings, which again, is not at issue here. Rather, Plaintiff's case turns on whether the Defendant Officers used excessive force, whether the PPD had a custom of tolerating excessive force by its officers, and/or whether the PPD failed to train, supervise, and discipline its officers regarding excessive force—not lethal force. While the isolated language from the DOJ Report cited by Plaintiff (discussed *infra*) does appear to contemplate *all* use of force concepts and training within the PPD, it is worth considering that many of the Report's findings are not entirely relevant to the alleged municipal custom and training deficiencies at issue.

Several decisions from this District have recently analyzed the DOJ Report in the context of municipal liability claims against the City. A majority of these cases relied upon and considered the DOJ Report, together with the plaintiffs' respective substantive allegations, in denying the City's motions to dismiss, for judgment on the pleadings, or for summary judgment.

In Valdez v. City of Philadelphia, the plaintiff asserted a municipal liability claim against the City premised on a failure to train theory of liability. 2016 WL 2646667 (E.D. Pa. May 10, 2016). The plaintiff alleged that he was unlawfully "tased" and beaten by PPD officers with batons during his arrest. The district court denied the City's motion for summary judgment, relying in part on the DOJ Report. The court first determined that the Report was relevant under Federal Rule of Evidence under Rule 401, and admissible under Rules 702 and 803(8)(A)(iii)-(B). Citing various excerpts and findings from the DOJ Report, the court ultimately concluded that a genuine issue of material fact remained regarding the level of training and de-escalation tactics offered to PPD officers. Id. at 6. The court was "particularly troubled by the Department of Justice's finding that [the City] fails to provide consistent training in its use of force policies," and thus a reasonable jury could find that this lack of training was "akin to a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. at 6 (quoting Thomas v. Cumberland Cty., 749 F.3d 217, 225 (3d Cir. 2014)).

Similarly, in Harris v. City of Philadelphia, the plaintiff asserted a municipal liability claim against the City stemming from two PPD officers' alleged use of excessive force during the plaintiff's arrest. 2016 WL 1073233 (E.D. Pa. Mar. 18, 2016). In denying the City's motion for judgment on the pleadings, the district court recognized that:

> Contrary to [the City's] contention, the DOJ Report did not address just the use of deadly force. Rather, the DOJ Report found deficiencies in [the City's] training programs and policies regarding the use of batons and electronic control weapons. [The

7

> plaintiff] cites this as proof of [the City's] knowledge of its training deficiencies…. The DOJ Report further concluded that inadequate training in defensive tactics may make an officer more likely to resort to excessive force…. Plaintiff also references three prior incidents of excessive force by [the City's] police officers. The [plaintiff's] assertions taken along with the DOJ Report findings create a plausible claim for [municipal] liability under § 1983 pertaining to the training of its police officers.

2016 WL 1073233 at * 4–5.

At least three other decisions from this district have relied upon the DOJ Report, albeit in the context of officer-involved shootings. See e.g., Brown-Dickerson v. City of Philadelphia, 2016 WL 1623438 (E.D. Pa. Apr. 25, 2016) (denying the City's motion to dismiss, concluding that the plaintiff had identified a number of changes recommended in the DOJ Report that pertained to the alleged misconduct at issue); Coyett v. City of Philadelphia, 2015 WL 8482815 (E.D. Pa. Dec. 10, 2015) (denying the City's motion for summary judgment, concluding that a reasonable jury could find a custom of failing to properly train PPD officers on the use of deadly force in light of the deficiencies identified in the DOJ Report); Berry v. City of Philadelphia, 2016 WL 2939502 (E.D. Pa. May 20, 2016) (denying the City's motion for summary judgment, concluding that the DOJ Report presented sufficient evidence such that a reasonable jury could find that the City had a custom of failing to train its police officers on the use of deadly force).

However, at least one district court decision expressly rejected consideration of the DOJ Report, and granted the City's motion to dismiss the plaintiff's municipal liability claim for failure to train. See Robinson v. City of Philadelphia, 2015 WL 5965003 (E.D. Pa. Oct. 13, 2015). In Robinson, the plaintiff alleged that he was unlawfully beaten, assaulted, and imprisoned by a PPD police detective at the PPD Headquarters. The court initially recognized that the DOJ Report "made numerous findings regarding the general use of force policy, the need for more frequent training, [and] revisions to the use of force policies," as well as

8

"recommendations regarding academy instruction, additional training, and additional programs." Id. at 2. Nevertheless, the court observed that the issuance of the DOJ Report post-dated the alleged misconduct at issue by approximately two years, and thus it could not be relied upon to allege actual or constructive notice of the City's training inadequacies. Id. at 10.[4] The court further concluded that the plaintiff did not "show" how those portions of the DOJ Report cited by the plaintiff demonstrated a causal connection between the alleged deficiency in training and the constitutional violation that the plaintiff allegedly suffered. Id.

Ultimately, the applicability of the DOJ Report with respect to assessing the plausibility of a Monell claim appears to call for a fact-intensive inquiry based upon the unique circumstances presented in each case. As multiple other courts have recognized, certain findings and conclusions within the Report appear to contemplate *all* use of force concepts and training initiatives within the PPD, not just lethal force. Given this scope of the DOJ Report, the weight of authority cited above, and the additional reasons supporting consideration of the Report (discussed *supra*), I will consider those limited portions of the DOJ Report to which Plaintiff expressly cites in his Second Amended Complaint, and which pertain to excessive force.

Plaintiff also cited several statistics regarding officer-involved shootings in support of his claims. The alleged misconduct at issue in the case before me, and the municipal custom for which Plaintiff seeks to impose liability upon the City, turns exclusively on whether or not the Defendant officers used excessive force—not lethal force. Therefore, in assessing the plausibility of Plaintiff's Monell claim, I will disregard those portions of the DOJ Report and Second Amended Complaint that specifically address shootings by PPD officers.

Having concluded that I may consider the DOJ Report, I now address the substance of the City's motion. Plaintiff has pled two forms of municipal liability: (1) a policy or custom by the

---

[4] I again note that the misconduct alleged here falls within the time period examined in the Report.

City of acquiescing in the use of excessive force by Philadelphia police officers, and (2) the failure of the City to adequately train, supervise, and discipline its officers with respect to appropriate levels of force to use on persons in police custody. (2d Am. Compl. ¶¶ 4, 42, 45, 46–49, 51–52, 65–77.)

### B. Policy or Custom of Allowing Officers to Use Excessive Force

The City argues that Plaintiff has failed to articulate facts demonstrating that either Ramsey or Nutter directed or participated in an offending policy or custom, and there are no facts to plausibly suggest that either policymaker acted with the requisite "deliberate indifference" toward violating citizens' constitutional rights. (Def.'s Mot. to Dismiss 2.)

It is well settled that municipal liability under § 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Benhaim v. Borough of Highland Park, 79 F. Supp. 3d 513, 521 (D.N.J. 2015) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). Therefore, to state a claim under Monell, a plaintiff must establish that: (1) the municipality had a policy[5] or custom[6] that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. 436 U.S. at 692–94; Buoniconti v. City of Philadelphia, 2015 WL 8007438, at *6 (E.D. Pa. Dec. 7, 2015).

---

[5] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

[6] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).

### i. Unlawful Policy or Custom

I note at the outset that Plaintiff has not set forth any factual allegations concerning an affirmative or otherwise formally-approved "proclamation, policy, or edict" regarding excessive force by the PPD. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). As such, the City's motion will be granted insofar as it seeks dismissal of Count II based on an official policy of the City.

I must also determine whether Plaintiff has pled sufficient facts to plausibly suggest a custom of tolerating excessive force. He alleges that the City has a custom of allowing officers to use excessive force by failing to conduct "proper and balanced investigations of complaints of unreasonable use of force … against civilians by police officers, thereby … encouraging police officers" to use excessive force. (2d Am. Compl. ¶ 52.) Plaintiff further asserts that the City failed to discipline officers for using excessive force, and failed to develop, implement, carry out, and ensure compliance with procedures necessary to prevent use of excessive force. (Id. at ¶¶ 72–73.) It is essentially a custom of inaction that Plaintiff has articulated, which he claims results in officers being allowed to use excessive force with impunity.

Plaintiff explains that "[f]rom 2009 to 2014, approximately 1,223 lawsuits were brought against the City of Philadelphia for police misconduct. During that same time period, the City of Philadelphia paid more than $40 million in damages and settlements for police misconduct lawsuits." (Id. at ¶ 42.)[7] While Plaintiff cites to lawsuits for "police misconduct" in the body of his Second Amended Complaint, the news article attached as an exhibit (from which these statistics were obtained) further reveals that one-third (33%) of all "police misconduct" lawsuit payouts during this time period involved allegations of excessive force. (2d Am. Compl., Ex. A.)

---

[7] To put this number in perspective, "the cities of Indianapolis, San Francisco, San Jose, and Austin settled or lost a *combined* 122 police misconduct cases – compared to 586 cases in Philadelphia." (Ex. A, p. 2.) (emphasis added).

I am cognizant that mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom. Nevertheless, at this early stage I must assume the veracity of these statistics, view them in the light most favorable to Plaintiff, and consider them in conjunction with Plaintiff's personal history of being targeted by the police. Viewed through this lens, I conclude that Plaintiff has sufficiently pled a "widespread" practice of excessive force.

My conclusion is supported by other decisions in this circuit, which have recognized similar customs in the context of municipal liability. See e.g., Noble v. City of Camden, 112 F. Supp. 3d 208, 223 (D.N.J. 2015) (permitting a Monell claim to proceed where "the [c]ity had [an alleged] custom of ignoring or failing to properly and promptly investigate unconstitutional excessive force complaints against [city] police officers for years preceding [the plaintiff's] incident, and by its inaction was [allegedly] deliberately indifferent to the need for such investigations to protect persons against excessive force during arrests, and was thus in part complicit in the misconduct that ensued"); see also Beck v. City of Pittsburgh, 89 F.3d 966, 976 (3d Cir. 1996) ("Protection of citizens' rights and liberties depends upon the substance of … investigatory procedures. Whether those procedures [have] substance [is] for the jury's consideration.").

Custom also requires "proof of knowledge and acquiescence by [a] decisionmaker." Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007). Accordingly, Plaintiff must also allege facts to plausibly suggest that Ramsey or Nutter possessed some type of knowledge or awareness of a well-settled, "widespread" practice of excessive force violations by Philadelphia police officers, and acquiesced to it. In light of the statistics cited above, and accepting Plaintiff's allegations as true, I conclude that Plaintiff has pled sufficient facts to plausibly suggest that Ramsey and Nutter were generally aware of the frequency with which excessive force violations

occurred. At a minimum, Plaintiff has pleaded sufficient facts to raise the reasonable expectation that discovery will reveal proof of his Monell claim. See Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir. 2016) (emphasizing that a claim will survive the motion to dismiss stage where it includes enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claim). These statistics were compiled from publicly available documents, which included files from the Philadelphia Law Department, and cover a roughly five-year time period. (See 2d Am. Compl., Ex. A, p. 2.)

      ii.   Deliberate Indifference

I will next assess whether Plaintiff has alleged facts which, if true, plausibly plead that the deliberate indifference of either Ramsey or Nutter proximately caused the constitutional injury that Plaintiff sustained. Deliberate indifference in this context refers to ignoring a "known threat or high likelihood of injury." M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412, 421 (M.D. Pa. 2014).

Taking Plaintiff's allegations as true, I conclude that Plaintiff has met his burden in pleading deliberate indifference. Plaintiff's allegation that a "superior officer" witnessed his condition after the beating (and instructed the responding officers to take Plaintiff to the hospital) bolsters his assertions that officers were essentially allowed to use excessive force with impunity. Additionally, in light of the statistics cited above, if Ramsey and Nutter were aware of the frequency with which alleged excessive force violations occurred (or, at a minimum, were at least alleged and documented), but failed to conduct proper investigations into those alleged violations, and further failed to implement procedures to prevent future violations, this could plausibly suggest a disregard for known threats of constitutional injuries to civilians, or, at a minimum, a high likelihood of such injuries.

          iii.         <u>Causation</u>

Lastly, I must determine whether Plaintiff has pled sufficient facts to establish causation. <u>See</u> <u>Bielevicz</u>, 915 F.2d at 850-51 ("[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered."). The United States Court of Appeals for the Third Circuit has on at least one occasion permitted a <u>Monell</u> claim to proceed where the policymakers allegedly "knew about and acquiesced in a custom tolerating the tacit use of excessive force by [the defendant city's] police officers." <u>Beck</u>, 89 F.3d at 976; <u>see also</u> <u>Bielevicz</u>, 915 F.2d at 851 ("[T]o sustain a § 1983 action against the City, plaintiffs must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."); <u>Boyden v. Twp. of Upper Darby</u>, 5 F. Supp. 3d 731, 742 (E.D. Pa. 2014) ("If the City is shown to have tolerated known misconduct by police officers, the issue [of] whether the City's inaction contributed to the individual officers' [excessive force in a given] instance is a question of fact for the jury.").

At this early stage, I conclude that Plaintiff has pled sufficient facts to satisfy the element of causation. He claims Ramsey and Nutter allowed excessive force violations to occur, failed to investigate allegations of excessive force by PPD officers, and that this inaction encouraged police officers to further engage in excessive force violations, including the incident at issue in this case. (2d Am. Compl. ¶¶ 48–52, 68, 72–73.) <u>See</u> <u>Bielevicz</u>, 915 F.2d at 851 ("[I]t is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future.").

Accordingly, I will deny the City's motion insofar as it seeks dismissal of Plaintiff's Monell claim (Count II) for failure to plead an unlawful custom of tolerating excessive force.

### C. Failure to Train, Supervise, and Discipline Theory of Municipal Liability

Plaintiff also advances a failure to train, supervise, and discipline theory of Monell liability. The City argues that Plaintiff cannot maintain his Monell claim under this theory because there are no facts to suggest that either policymaker communicated a message of approval toward violating citizens' constitutional rights. (Def.'s Mot. to Dismiss 2.)

To proceed under this theory, a plaintiff must plausibly plead that a policymaker's failure to train, supervise, and/or discipline municipal law enforcement "amounts to a deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Wood v. Williams, 568 F. App'x 100, 105 (3d Cir. 2014). In order for a municipality's failure to train or supervise to amount to deliberate indifference, a plaintiff must show that: (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Ancherani v. City of Scranton, 2015 WL 5924366, at *4 (M.D. Pa. Oct. 9, 2015) (citing Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)).

####        i.   Knowledge that Officers will Confront a Particular Situation

As to the first element, it is certainly plausible that a city's Police Commissioner and its Mayor were aware that police officers would confront situations in which they attempt to effectuate arrests on fleeing suspects, during which they must assess the appropriate amount of force to employ. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409-10

(1997) ("[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing [suspects][.]"). As such, this pleading prong is satisfied.

### ii. History of Employees Mishandling

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for … failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 409 (1997)). Similarly, to properly allege failure to supervise under Monell, the Third Circuit has required a plaintiff to show that a municipality has "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Rosembert v. Borough of E. Lansdowne, 2016 WL 161592, at *9 (E.D. Pa. Jan. 14, 2016) (quoting Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998)). "Policymakers['] 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" Buoniconti, 2015 WL 8007438, at *10 (quoting Brown, 520 U.S. at 407).

Here, Plaintiff has alleged that he has a history of being targeted by the police, and has had multiple violent encounters with Defendant Lai. Specifically, Plaintiff claims that Lai has aggressively slammed him up against walls dating back to 2006, and struck him in the head with a flashlight in 2011. (2d Am. Compl. ¶¶ 19–20.)[8]

Plaintiff further cites to the DOJ Report—commissioned by Ramsey—which concluded in part that the PPD's "training on use of force concepts and tactics is too infrequent, lacks the

---

[8] Additionally, a superior officer is alleged to have observed the aftermath of the Defendant officers' excessive force, but issued no discipline. Thus, approval could have been conveyed through silent acquiescence.

appropriate concepts, and, at times, lacks standards, which leaves officers inadequately prepared."(2d Am. Compl., Ex. E., p. 125; see also 2d Am. Compl. ¶ 45 ("According to the DOJ Report, [the PPD's] use of force policies need to be more explicit and officers need more training on them."); Id. at ¶ 47 ("According to the DOJ Report, the [PPD] lacks a field training program for its officers.")) Additionally, the statistics regarding excessive force complaints and settlements, which comprised roughly one-third of payouts by the City, bolster Plaintiff's allegations that there was a "pattern of similar incidents and circumstances."

At this early stage where Plaintiff enjoys a "highly favorable standard of review," I conclude that he has pled sufficient facts which, taken as true, raise the reasonable expectation that discovery will reveal evidence of a pattern of similar constitutional violations. Connelly, 809 F.3d at 789; see also Brown v. Mincey, 2012 WL 6761873, at *6 n.7 (D.N.J. Dec. 31, 2012) (denying motion to dismiss and emphasizing that plausibility does not translate into a prediction on the ultimate merits of the case, but rather grants a plaintiff the opportunity to engage in discovery to uncover evidence of Monell liability).

   iii. Deprivation of Constitutional Rights

As for the third prong—causing a deprivation of constitutional rights—use of excessive force on persons in police custody will frequently result in such deprivation. Accordingly, Plaintiff has adequately pled deliberate indifference.

   iv. Causation

If a plaintiff meets the "stringent standard" for deliberate indifference, he must then demonstrate that the failure to train proximately caused his constitutional injury by identifying a particular failure in a training program that is "closely related to the ultimate injury." Canton, 489 U.S. at 391. In analyzing causation, "the focus must be on adequacy of the training program

in relation to the tasks the particular officers must perform." Thomas, 749 F.3d at 226. The inquiry thus becomes whether "alleged injury [could] have been avoided had the officers been trained under a program that was not deficient in the identified respect[.]" Id. at 226. Liability attaches only if "the deficiency in training actually caused the [constitutional injury]." Buoniconti, 2015 WL 8007438, at *10.

At this stage, I conclude that Plaintiff has sufficiently pled that his alleged injury is sufficiently "related" to the identified deficiencies in training and supervision. If PPD officers lacked training on use of force concepts, and were inadequately prepared to assess the proper amount of force to employ when faced with the "moral certainty that [they] will be required to arrest fleeing [suspects]," it is plausible that this deficiency in training contributed, at least in part, to the alleged violation of Plaintiff's constitutional rights in the case before me. Brown, 520 U.S. at 409-10. Therefore, the final element of causation is satisfied, and I will deny the City's motion as to Plaintiff's failure to train, supervise, and discipline theory of municipal liability.

## IV. CONCLUSION

The City's motion to dismiss will be granted in part and denied in part. The motion will be granted insofar as it seeks dismissal of Count II premised on an unlawful policy. The motion is denied in all other respects—that is, Plaintiff's Monell claim (Count II) may proceed on (1) a theory of municipal liability premised on an alleged unlawful custom of tolerating and/or acquiescing in officers' use of excessive force, and (2) a theory of municipal liability premised on the PPD's alleged failure to properly train, supervise, and discipline its officers with respect to appropriate levels of force to use on persons in police custody.

An appropriate Order follows.